## Evans v. Provident Trust Company of Philadelphia, Trustee

*Nathaniel Shapiro,* for plaintiff.

*Townsend, Elliott & Munson,* for defendant.

KUN, J., December 11, 1934.—Defendant filed preliminary objections to a bill in equity, whereupon the plaintiff filed an amended bill. The matter is before the court on objections to the amended bill. The following facts are pleaded in the amended bill as the cause of action:

On July 14, 1925, plaintiff executed a bond and mortgage in the sum of $100,000 to the defendant as trustee, covering premises nos. 103-105 South Eleventh Street, Philadelphia, which he was at that time purchasing. At the time plaintiff executed this bond and mortgage, he assigned to the defendant,

as additional collateral security for the said obligation, a first mortgage in the sum of $22,000, covering premises 2017 Arch Street, Philadelphia. In May 1930, the principal of the $22,000 mortgage on the Arch Street property was paid to the defendant under the collateral agreement, and on May 20, 1930, the defendant invested the sum of $21,147.70 of the money belonging to the plaintiff in Delaware County Improvement 4½ percent bonds due April 1, 1948, and retained $854.30 in cash, which bonds and cash were retained by the defendant as additional collateral security for the $100,000 mortgage on the Eleventh Street property. In January 1926, the plaintiff sold the premises 103-105 South Eleventh Street, subject to a mortgage of $100,000, to Henry S. Belber, and the said Henry S. Belber has been the owner of the property to the present time. Henry S. Belber has defaulted in payments due to the defendant, and by reason thereof the defendant on July 7, 1934, notified the plaintiff that it would sell at private sale the $21,000 Delaware County Improvement 4½ percent bonds on August 14, 1934.

The plaintiff alleges that the property 103-105 South Eleventh Street has a present market value of $100,000 and that, therefore, if the property were sold at sheriff's sale first there would be no deficiency judgment and the plaintiff could obtain the return of the additional collateral. He states that he made numerous requests of the defendant to sell the property first, but the defendant refused to do this and insisted on selling the bonds on August 14, 1934.

The plaintiff further avers that the Delaware County Improvement 4½ percent bonds have a quoted value of $107⅝, and if they are sold at private sale the plaintiff would not be in a position to protect his interests and they would be sold below the market value.

Plaintiff also avers that, by reason of the refusal of the defendant to foreclose on the property 103-105 South Eleventh Street before selling the bonds, the plaintiff, being in lack of funds to protect this property, would lose both the property and the collateral, and that the defendant would be enabled to obtain a property worth much in excess of $100,000 and the value of the bonds.

Plaintiff further avers that the action of the defendant in refusing to foreclose on the property first and to proceed against the collateral for any deficiency was in violation of the letter and spirit of the Act of January 17, 1934, P. L. 243, which was passed to prevent the collection as a deficiency judgment of more than the actual loss that the mortgagee sustained.

The plaintiff concludes with a prayer that the defendant be restrained from selling the bonds on August 14, 1934, or at any time prior or subsequent to that time, and also that in accordance with the provisions and the spirit of the Act of 1934, the defendant be enjoined from selling the bonds until it has sold at sheriff's sale the property 103-105 South Eleventh Street and established a deficiency judgment in accordance with the provisions of the act.

The objections to the bill present these two questions: (1) May a debtor, having given his creditor several collaterals, direct the order in which the creditor shall dispose of the collaterals to repay his debt? (2) Does the Act of January 17, 1934, P. L. 243, commonly known as the Deficiency Judgments Act, require a creditor mortgagee, having additional collateral, to foreclose on the mortgage before he may dispose of the additional collateral to repay his debt?

The plaintiff, in seeking to have the court compel the defendant to bring foreclosure proceedings on the first mortgage before converting the substituted collateral on the second mortgage, disregards the obligation imposed on him at the time he made the loan, as set forth in the second paragraph of the agreement of May 14, 1925, under the terms of which the loan was made.

The terms and conditions under which these mortgages were pledged are set forth in a written agreement, which is attached to the amended bill. This agreement provides, in the second paragraph, "That whenever the said party of the second part [that is, the defendant] may have the right to bring suit on the said mortgage first above mentioned [that is, the mortgage on the Eleventh Street property] . . . it shall be lawful for the said party of the second part to sell anywhere at public sale, or at a private sale, held at any office of the party of the second part in Philadelphia, the said indenture of mortgage last above mentioned [that is, the mortgage on the Arch Street property] . . . it being, however, expressly understood and agreed that no sale shall be effected without at least 30-days' notice prior thereto of the intention of said party of the second part to make such sale, so as to give the said party of the first part or his assigns or other parties in interest an opportunity within said period of time to redeem the said mortgage . . . and upon such sale to transfer, assign and deliver up the last above mentioned mortgage . . . after deducting all legal and other costs, attorney's fees and expenses for collection sale and delivery, to apply the residue of the proceeds of sale or sales so made, to payment of said liabilities under the first above mentioned mortgage. . . ."

Aside from this agreement, defendant under the law has the right to dispose of any collateral pledged with it as security for the loan, so long as the loan remains unpaid. The principle of law on the subject was succinctly stated by Justice Sharswood in Ayres v. Wattson et al., 57 Pa. 360, as follows: "A creditor may hold an unlimited number of collaterals and can avail himself of any of them as long as the debt remains unpaid."

The extent to which this principle of law has been recognized in Pennsylvania is indicated by the case of Jennings et al., to use, v. Loeffler, 184 Pa. 318. In that case, the creditor held stock as collateral security for his debt and also held judgments which were liens upon the real estate of the debtor. A fund was raised by a sheriff's sale of the real estate. The court held that the creditor was not obliged to claim the payment of his debt out of the fund so raised but could rely upon the collateral security for its payment. See also Landberg et al. v. Equitable Investment Co. et al., 292 Pa. 476, 481; Hampton v. Congress B. & L. Assn., 300 Pa. 501, 505.

There is nothing in the Deficiency Judgments Act of 1934 which changes this well-settled law. Section 1 of that act provides:

"Be it enacted, & etc. That whenever any real property is sold on any execution on the foreclosure of any mortgage, or on a judgment entered on any obligations secured by mortgage, and the sum for which such property was sold is not sufficient to satisfy the debt, interest and costs, the plaintiff or use plaintiff shall, within six months after such sale, petition the court out of which such writ of execution issued to fix the fair value of the property sold."

As the terms of the act clearly state, it affects the rights of the parties after a sale on foreclosure proceedings. The purpose of the act is to assure, in the interest of a defendant mortgagor, a credit on the judgment according to the fair value of the property bought in by the mortgagee, regardless of the amount bid, very often a nominal amount. The act has nothing whatever to do, by its terms or any implication, with the question under consideration, that is, the right of a creditor to proceed on any collateral he has at his pleasure, until his debt is paid, at least so far as any rights of the debtor are concerned—a clear right the creditor has, as we have pointed out.

The bill does not set forth a good cause of action in equity, wherefore the preliminary objections thereto are sustained, and the bill is dismissed.